## The NAVAJO TRIBE OF INDIANS

v.

### The UNITED STATES.

### Nos. 69, 299 and 353.

United States Court of Claims.

Dec. 12, 1979.

Certiorari Denied Feb. 19, 1980.

See 100 S.Ct. 1016.

See also 601 F.2d 536, 220 Ct.Cl. ——.

William C. Schaab, Albuquerque, N. M., attorney of record, for plaintiff. Paul D. Barber and Sarah W. Barlow, Albuquerque, N. M., of counsel.

Dean K. Dunsmore, Washington, D. C., with whom was Asst. Atty. Gen. James W. Moorman, Washington, D. C., for defendant. Marvin E. Schneck, Washington, D. C., of counsel.

Before DAVIS, KUNZIG and BENNETT, Judges.

### ON PLAINTIFF'S REQUEST FOR REVIEW OF AN ORDER OF THE TRIAL JUDGE

PER CURIAM:

The Navajo Tribe timely filed its original petition on July 11, 1950, in docket 69 before the Indian Claims Commission, seeking a general accounting in claim 7 thereof. The two counts in the original petition in docket 353, filed August 11, 1951, pertained to the defendant's management and control of plaintiff's oil and gas resources. Plaintiff's First Amended Petition in docket 353, filed October 1, 1969, presented a one count claim for the defendant's failure to collect oil and gas royalties based on the fair market value of the production thereof or in conformance with applicable leases.

On March 9, 1961, a four volume accounting report was filed by defendant entitled the *United States General Accounting Office Report Re: Petition of the Navajo Tribe of Indians Trust Funds Indian Claims Commission No. 69* (hereafter "1961 Report"). Pages 341–93, 400, 408, 417, 420–21, 424–43, of the 1961 Report contain specific accountings for oil and gas receipts.

On March 18, 1970, the plaintiff filed exceptions to the 1961 Report in dockets 69 and 353.[1] The docket 69 exceptions did not

---

1. Although docket 299 appears in the caption of defendant's Motion, and in this opinion, it is not involved in the issues. Only dockets 69 and 353 are involved. Docket 299 pertains to coal, lumber and lumber products, vanadium, and stone, sand and gravel. It does not pertain to oil and gas.

refer to accounting for oil and gas receipts. Docket 353 exceptions alleged only that the 1961 Report failed to provide detailed information concerning $109,550.41 in oil and gas royalties. On January 28, 1971, plaintiff filed in docket 353 a Motion for Partial ·Summary Judgment and for a Complete Accounting. The latter demand (*i. e.,* complete accounting) merely repeated the demand for detail of the $109,550.41 item specified in the March 18, 1970, exceptions, and in addition asked for detail concerning $57,110.53 in oil and gas royalties from 1947 through June 30, 1951. The Commission ordered defendant to produce the requested detail for periods prior to August 13, 1946. *Navajo Tribe of Indians v. United States,* 31 Ind.Cl.Comm. 40, 55–57, 59 (1973).

Pursuant to this order the defendant filed with the Commission, on May 26, 1976, Volumes I and II of its "Accounting Report on Oil and Gas Contracts", and on June 15, 1977, Volumes III and IV were filed titled "Oil and Gas Bonuses, Royalties, Rentals and Fees" to complete the ordered submission. The four volumes are referred to collectively as the Oil and Gas Report.

On April 4, 1978, the plaintiff filed exceptions to the Oil and Gas Report. ("Exceptions".) On August 18, 1978, the defendant filed a "Motion to Dismiss or Strike or For More Definite Statement" which was addressed to various parts of the plaintiff's Exceptions.[2]

These accounting claims having been transferred to this court (*see Navajo Tribe v. United States,* 586 F.2d 192, 195, 218 Ct.Cl. ——, —— (1978), *cert. denied,* 441 U.S. 944, 99 S.Ct. 2163, 60 L.Ed.2d 1046 (1979)), Trial Judge Bernhardt passed on the Government's motion in an opinion of December 19, 1978, granting certain parts of that motion, denying other parts, and finding it unnecessary to pass upon still other portions. The Government has not sought review of any segment of the trial judge's opinion. Plaintiff has sought review of only two aspects of his opinion and decision. It is those two aspects which we consider in this opinion.[3]

I

Defendant's motion sought dismissal of paragraph M of Part II of plaintiff's exceptions which reads as follows:

During the years 1920 through 1946 the defendant actively undertook to manage and make productive the plaintiff's potential oil and gas producing properties. The defendant unreasonably and imprudently failed to offer exploratory oil and gas leases on large tracts of those lands although there was heavy demand in the industry, as evidenced by the fact that through that period virtually 100% of the defendant's adjacent Bureau of Land Management (BLM) lands were leased for oil and gas exploration.

The trial judge allowed this portion of defendant's motion to dismiss for failure to state a claim. Plaintiff contests that ruling.

A. Before the judges the Government has raised for the first time the additional point that, regardless of the correctness of the trial judge's reasoning, Exception M is precluded by the intervening holding of the court in *Navajo Tribe of Indians v. United States,* 601 F.2d 536, 220 Ct.Cl. —— (1979) (as clarified by the order of September 28, 1979), that claim 7 (the accounting claim) of docket No. 69—which is the claim now before us—cannot encompass any claim which is also within claims 1 through 6 and claim 8 of docket No. 69, all of which have been dismissed by the court in the decision of June 13, 1979. Defendant asserts that Exception M duplicates a cause of action within now-dismissed claim 5.

**2.** As interpreted by the Indian Claims Commission, Rule 11 of the Commission's Rules of . sion, Rule 11 of the Commission's Rules of Practice, 25 C.F.R. § 503.11, permitted the Government to respond to accounting exceptions by a motion to dismiss or to strike or for a more definite statement. The Commission treated exceptions to accounting reports as pleadings. The trial judge accepted, for this case, the parties' use of the Commission practice, as do we.

**3.** Insofar as no review has been sought of the other aspects of the trial judge's opinion, we leave those portions undisturbed and still in effect.

However, we understand claim 5 as presenting only a claim for money damages for alleged breaches of trust by defendant with respect to oil and gas actually produced from Navajo land, i. e., damages for demanding and receiving inadequate consideration for the oil and gas so produced and sold. Claim 5 does not deal at all with the separate matter of the Government's failure to lease other Navajo lands or to cause those lands to produce oil and gas. Exception M, on the other hand, is directed solely to the latter subject of failure to exploit and is therefore outside of the coverage of dismissed claim 5.

B. The trial judge read Exception M as making the broad claim that the Government was under the general obligation to maximize the income from plaintiff's oil and gas bearing properties by granting exploratory leases. In rejecting that position, the trial judge said:

"In *Navajo Tribe v. United States*, 364 F.2d 320, 176 Ct.Cl. 502 (1966), which concerned an oil and gas lease in part of plaintiff's Rattlesnake field, the court held that the government owed the tribe a special duty of care to inform the tribe in advance of a lease assignment to the government. There was no direct issue there as to defendant's failure to make plaintiff's land productive. There is no general obligation, as distinct from an express obligation imposed by statute, agreement, or the like, for the government to make the plaintiff's property productive by positive efforts to find lessees for exploratory oil and gas properties in order to produce income for the tribe. *Three Affiliated Tribes of the Fort Berthold Reservation v. United States*, 36 Ind.Cl.Comm. 116, 130 (1975); *Gila River Pima-Maricopa Indian Community v. United States*, 35 Ind.Cl.Comm. 209, 217 (1974); *Blackfeet & Gros Ventre Tribe v. United States*, 32 Ind.Cl.Comm. 65, 77–78 (1973), *rehearing denied*, 34 Ind.Cl.Comm. 122 (1974). In the latter case it was said at page 77: 'Indian Reservations are not like apartment houses which a trustee is expect-

ed to keep filled with paying tenants at all times. No general law requires the government to administer Indian land for profit at all.' See also *American Indians Residing on the Maricopa-Ak Chin Indian Reservations v. United States*, 31 Ind.Cl.Comm. 384, 393 (1973). The plaintiff cites page 217 of the *Gila River Pima-Maricopa Indian Community* case, *supra*, which held that the general obligation of the government to make trust property productive arises 'only when the defendant undertakes to permit third parties to use the plaintiff's property or does so itself.' This is not authority for plaintiff's proposition that, once the government has leased out part of a tribe's property, it is fiducially obligated to try to lease out the rest. It means only what it says, namely, that once it leases tribal property it is fiducially obligated to account for the income from the property leased."

"There may be a distinction between omission and commission on the government's part. That is, while the government has no fiduciary duty to actively endeavor to lease plaintiff's property, it would violate its fiduciary duty if it unreasonably refused to approve leases. But this latter has not been charged."

C. To the extent Exception M raises the broad and general claim that the Government was under the overriding fiduciary obligation to maximize the oil and gas production from Navajo lands, we agree with the trial judge that such a broad and general claim cannot stand. But we also see in the Exception, as pleaded and argued to us, a much narrower claim that the defendant, in leasing for oil and gas purposes its adjacent Bureau of Land Management (BLM) lands but not leasing Navajo lands, chose to favor its own interests over those of the Indians. In other words, the assertion is that the Federal Government, deliberately or negligently, obtained money for itself (through exploitation of solely its own lands in the area) at the expense of the Navajos.[4] If this assertion can be proved, there would be a violation of the defendant's fiduciary

---

4. Plaintiff argues, for instance, that it is possible that the oil and gas leases on the adjacent BLM lands drew substantial oil from under the next-door Navajo lands.

obligation. As fiduciary to Indians, the Government cannot prefer its own monetary interests where there is a conflict-of-interest situation; for example, it cannot, after learning of an opportunity, prevent the beneficiary from getting it and seize it for itself. *Navajo Tribe of Indians v. United States*, 364 F.2d 320, 322–24, 176 Ct.Cl. 502, 507–09 (1966). *See also Ottawa Tribe v. United States*, 166 Ct.Cl. 373, 380, *cert. denied*, 379 U.S. 929, 85 S.Ct. 324, 13 L.Ed.2d 341 (1964).

Accordingly, we deny defendant's motion to dismiss paragraph M of Part II of plaintiff's Exceptions, to the extent it embodies the limited conflict-of-interest claim we find in it.[5]

## II

■ Another part of defendant's Motion seeks the dismissal of paragraph O of Part II of plaintiff's Exceptions. Paragraph O alleges that the Oil and Gas Report fails to account for all oil and gas leases of plaintiff's lands negotiated prior to August 13, 1946, and of the revenues therefrom, including but not limited to Contract No. I–149–IND–6382, and leases which were granted or should have been granted at a lease sale on June 17, 1946, to five bidders named in exhibit 36 of the Oil and Gas Report.[6] The trial judge allowed this part of defendant's motion; plaintiff seeks review of that disposition.

The court agrees with and adopts the trial judge's opinion on this point, which is as follows: "According to page 3, Volume II, of the Oil and Gas Report, the bids for the leases in question were opened on June 17, 1946 and deposits which were received prior to August 13, 1946, were held in Special Deposits until the contracts were approved or the deposits forfeited. No official action was taken approving or disapproving the contracts prior to August 13, 1946, and for that reason the Oil and Gas Report did not reflect the contract proceeds, if any. Accordingly, the defendant contends that the exception should be dismissed for lack of jurisdiction over claims accruing after August 13, 1946."

"Responding the plaintiff contends that defendant can be liable for improper deposit of bids, unreasonable delay in collecting funds and approving the leases, irregularities in advertising and bidding procedures, and imprudent lease terms, all of which damages could have been occasioned prior to August 13, 1946. Moreover, if wrongs were committed in connection with the contracts before the claim accrual cutoff date but damages flowed from them after the date, then the court would still have jurisdiction under the theory of 'continuing wrongs.' The jurisdiction of the court over continuing wrongs under the Indian Claims Commission Act was confirmed by the court on October 18, 1978, in this very case. *Navajo Tribe v. United States,* (Ct.Cl.1978), 586 F.2d 192 [218 Ct.Cl. ——, ——], *cert. denied,* [441 U.S. 944, 99 S.Ct. 2163, 60 L. Ed.2d 1046 (1979)]."

"However, there is no indication that a wrongful course of conduct by the government existed prior to August 13, 1946. Attached to defendant's reply brief as Appendix L is an affidavit of John J. Bokan which was included in the record considered by the court in *Navajo Tribe v. United States,* 193 Ct.Cl. 1095 (1971). Bokan was an Area Real Property Management Officer in the Bureau of Indian Affairs in 1970, and was familiar with the procedure followed in the

---

**5.** In view of our holding, the trial judge has leave to reconsider, if he wishes, Part VII of defendant's motion which seeks a more definite statement of Exception M.

**6.** Exception O states:

"O. The Report fails to account for all oil and gas leases of plaintiff's lands negotiated prior to August 13, 1946 and revenues therefrom, including but not limited to contract No. I–149–IND–6382 and leases which were

granted or should have been granted to the following bidders at the lease sale held on June 17, 1946 as shown in Exhibit 36 of the Report:
Southern Union Production Co. of Dallas, Texas Ray E. Andruss of El Monte, California W. B. Scoville of Salt Lake City, Utah H. R. Askins of Phoenix, Arizona Byrd-Frost, Inc. of Dallas, Texas"

leasing of mineral interests on the Navajo Reservation. His affidavit indicates that the tribe plays an active role in the leasing of mineral lands, commencing with its request to the Bureau to advertise such leases and the availability of such leases. Bids are screened for adequacy by the Geological Survey which submits a recommendation to the Bureau and the tribe. The tribe then approves the lease by resolution, and the Bureau's approval is also required. During this procedure all bids are placed in Special Deposit accounts, and the deposits of unsuccessful bidders are returned after bid opening. According to the Bokan affidavit the Bureau's action in these matters is prompt, but tribal approval is more time consuming."

"Under these facts it cannot be seen how the government was guilty of any wrongdoing prior to August 13, 1946, that may have continued on past that date. Plaintiff would have no interest in the bid deposits until approval of the leases, so no claim of wrongdoing as to bid deposits could apply when none of the leases was consummated until after August 13, 1946. Nor is there any showing or even any likelihood that the government was under any obligation to approve the leases before August 13, 1946. At least if there was such a failure the plaintiff should have alleged the dates of tribal approval, for the government's duty to act would follow that."

Plaintiff challenges the trial judge's use of the Bokan affidavit but no counter-affidavit was filed before the trial judge, or before us on review, nor has there been an acceptable effort to refute the statements made in the affidavit. Therefore, there is no factual issue in the case and it is proper to dispose of the matter at this time. Plaintiff urges also that Exception O covers the failure of the defendant to grant permits or authorizations to explore for oil on Navajo lands, but on its face the Exception is restricted to leases actually made before August 13, 1946. In any event, the Govern-

ment's mere failure to seek drillers to explore for oil or gas would not be a breach of its fiduciary obligation under the principles we have reiterated in Part I, *supra*.[7]

## CONCLUSION

Exception M is sustained and Exception O is dismissed to the extent provided in and in accordance with this opinion.

7. Neither the trial judge's dismissal of Exception O, nor our affirmance of it, precludes the plaintiff from presenting, with proper support, any failure of defendant to account properly for the proceeds of leases entered into before August 13, 1946, as to which defendant failed in its fiduciary obligations before that date.