**WHITE MOUNTAIN APACHE TRIBE OF ARIZONA, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 22–H.**

United States Claims Court.

May 30, 1986.

William H. Veeder, Washington, D.C., for plaintiff. Robert C. Brauchli, Whiteriver, Ariz., of counsel.

Bernard M. Sisson, Washington, D.C., with whom was Asst. Atty. Gen. F. Henry Habicht, II, for defendant.

## ORDER

NETTESHEIM, Judge. '

On April 21, 1986, defendant filed a motion *in limine* for an order precluding admission into evidence of plaintiff White Mountain Apache Tribe of Arizona's ("plaintiff's") expert witness report on damages.

■ A motion *in limine* is a recognized method under RUSCC 16 and Fed.R.Civ.P. 16 for obtaining a pretrial order simplifying issues for trial, including the exclusion of irrelevant evidence on the ground that it is offered to prove a legally deficient claim. *Baskett v. United States*, 2 Cl.Ct. 356, 359–60, 367–68 (1983) (motion *in limine*), *aff'd mem.*, 790 F.2d 93 (Fed.Cir.1986) (merits); *see also International Graphics, Division of Moore Business Forms, Inc. v. United States*, 5 Cl.Ct. 100, 104 (1984) (motion *in limine*). Such a motion enables a court to rule in advance of trial on the admissibility of proposed documentary or testimonial evidence. *Baskett*, 2 Cl.Ct. at 368.

The subject damages report in this case was filed pursuant to an order requiring that all expert testimony be presented by way of written reports and oral testimony. Consequently, the damages report is proffered evidence, to be highlighted by testimony at the forthcoming trial. Defendant's motion thus addresses itself to the admissibility of expert evidence on damages. The motion, however, cannot presume the acceptance of defendant's arguments concerning liability. It has been denied in those instances in which defendant has presumed liability determinations in its favor.

Defendant's motion and accompanying brief discuss major departures (in defendant's view) from established case law of both the Indian Claims Commission and the United States Court of Claims in plaintiff's damages report. Instead of responding to defendant's arguments and authorities, plaintiff's opposition boldly charts a different course by arguing wholly irrelevant

theories and cases that do nothing to dilute defendant's arguments.[1]

Defendant has summarized accurately plaintiff's conduct concerning this damages report:

> This marks the third time in the recent past in which plaintiff has simply ignored the evidentiary burdens with respect to damages. First, plaintiff wholly ignored its duties to submit any damage evidence. Order filed August 30, 1985. Next plaintiff [submitted] damage evidence in direct non-compliance with the court's order. Order filed [February 18, 1986]. Finally, plaintiff fails to even respond to defendant's motion to exclude such non-complying evidence. Order filed April 25, 1986. Counsel's course of conduct might be viewed as calling for proceedings under Rule 16(f) *See, Athaus v. United States,* Cl.Ct. No. 443–82L, Order of April 7, 1985 (Judge Mayer). At the minimum it warrants the unequivocal granting of government's motion *in limine* with respect to damages.

Def's Br. filed May 23, 1986, at 7 n. 1.

1. *Cost of Restoration Without Consideration of Diminution in Value as a Measure of Damages*

■ Plaintiff charges that because defendant allowed nonIndian users to lease tribal lands, the lands were overgrazed and as a consequence eroded. Plaintiff seeks recovery of the costs of restoring its lands to the condition in which defendant found them. Defendant first contends that this court has no jurisdiction over "continuing wrongs" because plaintiff failed to prove any damages before August 13, 1946. Under the Indian Claims Commission Act, plaintiff must prove wrongful conduct before the cutoff date for claim accrual. If damages flow from that wrongful conduct after the cut-off date, this court may exercise jurisdiction under the theory of "continuing wrongs." *E.g., Navajo Tribe v. United States,* 9 Cl.Ct. 336, 408 (1986), *appeal docketed,* Nos. 86–1022 & 86–1023 (Fed.Cir. Mar. 19, 1986); *Navajo Tribe v. United States,* 222 Ct.Cl. 158, 166, 610 F.2d 766, 769 (1979). Contrary to defendant's argument, then, the jurisdictional prerequisite for a continuing wrong is a finding of liability, not damages, prior to August 13, 1946.[2]

■ Responding to plaintiff's assertions that cost of restoration is the measure of damages, defendant counters by this motion that the proper measure of damages, assuming, *arguendo,* liability, is the lesser of the cost of restoration or diminution in market value of the lands. The controlling case law solidly supports defendant. In holding that recovery for damage to Indian lands is subject to diminution in market value, the Court of Claims said:

> The Indians maintain ... that they should be treated differently because they cannot sell their land and purchase another tract in the same way an ordinary owner can. This is true, but the focus of recovery in a damage action still remains a comparison in monetary terms between what the injured party would have obtained (with respect to the land) if the contract had been fully performed, and what he actually got....

*Gila River Pima-Maricopa Indian Community v. United States,* 199 Ct.Cl. 586, 596, 467 F.2d 1351, 1357 (1972). Where the expense of restoration exceeds the diminution in market value of the property caused by the lessee's nonperformance, the dimi-

---

1. Arguing that the motion *in limine* is premature, plaintiff cites *Scheuer v. Rhodes,* 416 U.S. 232, 235, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1979). *Scheuer* deals with the standards governing a motion to dismiss a complaint, not the admissibility of a fully developed written evidentiary presentation. Defendant's dissection of the cases dealing with the "substitute facilities" doctrine at pp. 3–6 of its reply brief is accurate, and the record would not be enhanced by summarizing the court's reading, as well.

Defendant's discussion of these cases is incorporated herein by reference.

2. When plaintiff claimed that it could not submit damages testimony other than current to the present, the court cautioned plaintiff to submit several break-outs, Order entered on Feb. 18, 1986, ¶ 1, to lessen the consequences of a failure of proof should plaintiff be unable to prove a continuing claim to the present.

nution in market value is the proper measure of damage.[3] 199 Ct.Cl. at 596, 467 F.2d at 1357.

The cost of restoration may be applicable where the property at issue belongs to the Government and there is no law authorizing its sale. *Feather River Lumber Co. v. United States*, 30 F.2d 642, 644 (9th Cir. 1929). Indian lands, however, may be alienated with congressional approval, *Joint Tribal Chiefs of the Passamaquoddy Tribe v. Morton*, 528 F.2d 370, 372 (1st Cir.1975), so this exception does not play a role in this case.

Plaintiff cites several cases in support of the "substitute facilities" doctrine. A prerequisite for invoking that doctrine is dispossession. Plaintiff has not been dispossessed; citation to those cases is inapposite. Even if they stood for the propositions plaintiff extracts from them, *see supra* note 1, plaintiff based its damages on cost of restoration, not the value of substitute facilities.

Plaintiff further contends that the cost of restoration is appropriate where market value cannot be ascertained, but the damages report gives no hint as to whether, and for what reasons, plaintiff's experts considered and rejected the customary approach. Defendant points out in reply that a reservation's market value can be derived from comparable sales based on historical appraisals and that this approach has been utilized in many cases of this type. *See* authorities cited in Def's Br. filed May 23, 1986, at 4.

Defendant's motion to exclude plaintiff's proof of damages in Section I of the damages report based on the cost of restoration alone is granted.

2. *Lost Beef Sale Revenues and Employment Earnings as Measures of Damages*

Plaintiff's damages report offers estimates of losses in revenue sustained by the Tribe as a result of defendant's alleged range mismanagement from 1897 to 1986. The estimated losses are based on a hypothetical tribal livestock enterprise that utilized all of plaintiff's range lands, although individually owned livestock also grazed the range. Plaintiff effectively seeks to recover lost profits for an unestablished business.

The Claims Court has "viewed with cautious skepticism claims for lost profits, especially in the case of a new venture." *Northern Paiute Nation v. United States*, 9 Cl.Ct. 639, 646 (1986). The likelihood of profits from a new venture is too uncertain for loss of anticipated profits to form a reliable measure of the damage suffered. There must be some basis on which a reasonable estimate of the amount of profit can be made. *Neely v. United States*, 152 Ct.Cl. 137, 146–47, 285 F.2d 438, 443 (1961).

Plaintiff's proof assumes that it would have had, and would have acted upon, perfect information over almost a century of business management. It further assumes that individually owned livestock would no longer have been present and that employment earnings would have accrued to the Tribe. Most fundamentally, it assumes the existence of a venture that the Government was not responsible for establishing. These assumptions may trace their basis to plaintiff's liability case. Unlike plaintiff's proof on damages for overgrazing, the measure of damages itself—lost profits—is a recognized measure of damages, assuming that the damages are shown not to be speculative.

In any event, recovery of interest on a claim for lost profits is precluded because defendant never held the disputed monies in trust for plaintiff. Nor is there a statute expressly providing for payment of interest. *Navajo Tribe v. United States*, 9

---

**3.** That this line of authority governs the issue exemplifies plaintiff's folly in not discussing defendant's cases. Defendant cites to *Navajo Tribe*, 9 Cl.Ct. at 410, n. 69, for its dictum: "[T]he circumstances of some Indian valuation cases would warrant the application of an exception from the general rule limiting restoration damages...." The invitation to supply such circumstances was not taken.

Cl.Ct. 227, 270–72 (1985), *appeal docketed,* No. 86–886 (Fed.Cir. Feb. 4, 1986). Defendant's motion is otherwise denied with respect to Section II of the damages report.

### 3. *Lease Value of Water as Measure of Damages*

██ Plaintiff seeks recovery for loss of the lease value of water to downstream users. According to plaintiff's damages report, beginning in 1907 the Salt River Federal Reclamation Project entered into contracts for the sale of hydropower generated at Roosevelt Dam. Plaintiff seeks recovery for three elements of the water supply committed to downstream uses: 1) water requirements for irrigable lands of 267,908 acre feet per year (based on 49,808 potentially irrigable acres); 2) water requirements of 5,380 acre feet for irrigated lands along the reservation streams that were destroyed by erosion resulting from overgrazing; and 3) induced runoff of upwards of 100,000 acre feet per year between 1917–25 and 65,123 acre feet per year between 1958–69.

Defendant cites *Gila River Pima-Maricopa Indian Community v. United States,* 231 Ct.Cl. 193, 684 F.2d 852 (1982) (per curiam), for the proposition that reservations are entitled to only enough water necessary to irrigate their historically irrigated lands. In *Gila River,* however, plaintiff tribes utilized only their historically irrigated acreage and were financially unable to construct new facilities enabling the tribes to use their potentially irrigable acreage. *See* 231 Ct.Cl. at 213, 684 F.2d at 864. The Court of Claims held that the Government had no duty to construct new facilities enabling the Indians to use the greater water rights claimed at trial. Therefore, the tribes were entitled to damages based only on their historically irrigated acreage.

██ Defendant concludes that damages reflecting practicably irrigable acreage are only appropriate when the Government has assumed a duty to irrigate. Plaintiff in this case is not making solely a *Gila River* claim for failure to irrigate.

Plaintiff also asserts a claim for loss of the lease value of water based in part on 49,808 practicably irrigable acres. "Practicably irrigable acreage" is the measure of the water rights to which reservations are entitled. *Arizona v. California,* 373 U.S. 546, 600, 83 S.Ct. 1468, 1498, 10 L.Ed.2d 542 (1963). Those rights are independent of any governmental duty to irrigate. Reservations are entitled to enough water to meet the present and future needs of the tribe. *Id.*

Defendant assumes that appropriated waters can only be used for irrigation of reservation lands. There is no such requirement. *Winters v. United States,* 207 U.S. 564, 576, 28 S.Ct. 207, 211, 52 L.Ed. 340 (1907). The *Winters* Court recognized the reservation's right to utilize its resources as it sees fit, whether for hunting, agriculture, or grazing of stock. 207 U.S. at 576, 28 S.Ct. at 211.

Regrettably, the court has contributed to the confusion concerning the type of claim for irrigable land recognized in this court. At an early point in the litigation, plaintiff, in response to interrogatories, asserted that the Government had a legal obligation to develop "all potentially (or practicably) irrigable acreage on the reservation." *White Mountain Apache Tribe v. United States,* 9 Cl.Ct. 32, 33 n. 2 (1985) (motion for reconsideration) (quoting plaintiff's response to defendant's interrogatories dated October 28, 1983). The difference between "potentially" and "practicably" is total. Although there is no implied reservation of water for irrigating all potentially irrigable acreage, the implication applies to that which practicably can be irrigated. The Supreme Court so held in *Arizona.* 373 U.S. at 600–01, 83 S.Ct. at 1497–98.

██ In the text of its reconsideration opinion, this court incorrectly stated that *Winters* and *Arizona* provided no authority equating the amount of reserved water to that necessary for irrigation of all practicably irrigable acreage. 9 Cl.Ct. at 33. The text should have read "potentially." The court regrets, and apologizes for, this

error. Practicably irrigable acreage for purposes of cultivation, per *Gila River*, is measured by those acres actually cultivated, as well as all acreage that a tribe could have cultivated, but for the lack of water, utilizing its own financial resources and not the Government's.

Defendant also contends that the Government never intended to allow reservations to alienate their water rights to third parties and that, in any event, plaintiff was barred from doing so. This argument misses the point. Plaintiff claims a systematic diversion of water from the reservation for the benefit of a federal reclamation project. This is akin to allowing recovery for the Government's licensing a hydroelectric power plant on a reservation for the sale by the licensee to a federally sponsored irrigation project. *See Confederated Salish & Kootenai Tribes of the Flathead Reservation*, 181 Ct.Cl. 739, 747 (1967). In that case the court said Congress recognized the tribes' rights to the water power value of a dam site because legislation reserved such sites from disposition. The case—or others like it—may or may not be relevant to plaintiff's liability claim.

It is true that defendant presumes that its liability theory will prevail and to that extent its motion *in limine* is premature. However, the law is settled that irrespective of which theory prevails (measurement of reserved water by what can be leased or by what can be used for cultivation), the authorities restrict recovery to the loss of water "necessary to fulfill the purpose of the reservation, no more," *Cappaert v. United States*, 426 U.S. 128, 141, 96 S.Ct. 2062, 2071, 48 L.Ed.2d 523 (1976) (citing *Arizona v. California*, 373 U.S. at 600–601, 83 S.Ct. at 1497–98), not the value to downstream users.

> Each time this court has applied the "implied-reservation-of-water doctrine," it has carefully examined both the asserted water right and the specific purposes for which the land was reserved, and concluded that without the water the pur-

> poses of the reservation would be entirely defeated....

*United States v. Mexico*, 438 U.S. 696, 700, 98 S.Ct. 3012, 3014, 57 L.Ed.2d 1052 (1978) (footnote omitted). Therefore, even if plaintiff prevails on its liability theory, its proposed evidence on damages may not be admissible.

■ Proof of damages resulting from the failure to expand the irrigation systems constructed by plaintiff between 1897 and 1907 is excluded. Defendant has no duty to expand plaintiff's irrigation system. *White Mountain Apache Tribe of Arizona*, 8 Cl.Ct. 677, 684 (1985) (motion to dismiss). The inclusion of interest for leased water is disallowed based on the same authority discussed in part 2 of this order. Defendant's motion with respect to Section III of the damages report is granted only in these respects.

## CONCLUSION

Defendant's motion is granted in part and denied in part, as follows:

1. Section I of the Summary of Damages Stemming from Mismanagement of Grazing, Soils & Water Resources of Fort Apache Indian Reservation, filed on March 21, 1986, is excluded.

2. Section II of the damages report is excluded only insofar as damages reflect interest.

3. Section III of the damages report is excluded insofar as damages reflect the failure to expand the irrigation system and interest.